IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Charles T. Sullivan, | C/A No. 5:23-cv-1077-SAL |
| Plaintiff, | |
| v. | **ORDER** |
| South Carolina Department of Mental Health; Wellpath Recovery Solutions a/k/a Correct Care Recovery Solutions a/k/a Correct Care of South Carolina; Kelly Gothard; Elizabeth Hutto; and Captain Tyrone Werts, | |
| Defendants. | |

This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Kaymani D. West made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) (the "Report"). [ECF No. 49.] The Report recommends the court grant motions to dismiss filed by Defendants Kelly Gothard, Elizabeth Hutto, Captain Tyrone Werts, and the South Carolina Department of Mental Health, ECF No. 28, and by Wellpath Recovery Solutions ("Wellpath"), ECF No. 34. For the reasons below, the court adopts the Report and grants Defendants' motions.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Charles T. Sullivan is involuntarily committed to the custody of the South Carolina Department of Mental Health ("SCDMH") pursuant to the Sexually Violent Predator Act ("SVPA"), S.C. Code Ann. § 44-48-10, *et. seq.* [ECF No. 22 at 1–2.] He alleges Defendants violated his constitutional right to marry by refusing to transport him to a mandatory appointment with the United States Citizenship and Immigration Services ("USCIS"). *Id.* at 2–8. The appointment concerned a visa application for his fiancée, a resident of the United Kingdom. *Id.* at

1

5.  Sullivan claims Defendants denied his transportation request because the appointment was not related to the SVPA treatment program.  *Id.* at 6.  He further alleges Defendants' decision resulted in the denial of his fiancée's application—a ruling which he may not appeal and which cost him a nonrefundable fee of $545.  *Id.* at 5–8.

Sullivan now seeks a declaratory judgment that Defendants violated his rights under the Equal Protection and Due Process Clauses of the United States Constitution.  *Id.* at 1.  He also seeks damages, along with preliminary and permanent injunctions ordering Defendants to: (1) transport him to any future USCIS appointments that may emerge upon refiling his application, and (2) create a grievance policy allowing involuntarily committed residents to appeal "decisions regarding their rights."  *Id.* at 15.

Defendants move to dismiss Sullivan's claims under Federal Rule of Civil Procedure 12(b)(6).  [ECF Nos. 28, 34.]  They claim immunity from liability and argue that, in any event, Sullivan does not allege a cognizable constitutional violation.  The magistrate judge recommends the court grant the motions.  [ECF No. 49.]  Sullivan filed objections to the Report, ECF No. 56, and Defendants replied, ECF Nos. 57–58.  This matter is now fully briefed and ripe for review.

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to the court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court.  See *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  In response to a recommendation, any party may file written objections.  See *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)).  The district court then reviews de novo only the portions of the Report to which a party has specifically objected.  *Id*.  An objection is sufficiently specific if it reasonably alerts the court to a party's true objection to the Report.  *Id.*

at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)).  If instead a litigant objects only generally, the court reviews the Report for clear error and need not provide an explanation for adopting the recommendation.  *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

Because Sullivan is proceeding *pro se*, the court must liberally construe his arguments to allow him to fully develop potentially meritorious claims.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  That said, the requirement of liberal construction does not mean the court can ignore a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

## DISCUSSION

### I.

Sullivan presents his claims under the Declaratory Judgment Act, 28 U.S.C. § 2201.  [ECF No. 22.]  The statute is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted).  As such, the court's assumption of jurisdiction over a declaratory judgment action is not "automatic or obligatory."  *Id.* at 288.  "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

The Report correctly finds that Sullivan does not plead facts sufficient to justify a declaratory judgment.  [ECF No. 49 at 9–10.]  In the complaint, Sullivan indicates that USCIS denied his fiancée's visa application in January 2023.  [ECF No. 22 at 8.]  He also clearly states that the decision was not appealable.  *Id.*  And though Sullivan now seeks declaratory relief "so that *any* efforts to re-file will no longer be subject to Defendants['] arbitrary discretion," his

controversy is only speculative at this point. *Id.* at 10 (emphasis added). The court thus agrees that this suit should not be adjudicated as a declaratory judgment action.[1]

The court also agrees that Sullivan's complaint is "better framed" as a 42 U.S.C. § 1983 claim. [ECF No. 49 at 10.] Under § 1983, plaintiffs may recover for violations of rights secured by the Constitution or laws of the United States committed by persons acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Sullivan alleges Defendants infringed on his constitutional right to marry by denying his transportation request, and he claims they will repeat this conduct when he reapplies for a visa. Sullivan names Defendants who acted to carry out the SVPA treatment program, an initiative created by the South Carolina legislature and administered by the South Carolina Department of Mental Health. *See* S.C. Code Ann. § 44-48-10, *et. seq.* His complaint then is more properly construed as a § 1983 action.

## II.

Even so construed, however, Sullivan's claims fail. To begin, several named Defendants are not amendable to suit under § 1983. Additionally, to the extent they are properly named, Sullivan does not plead an actionable constitutional violation. The court considers the Defendants in turn.

### A. Wellpath

Section 1983 provides that a defendant must be a "person" acting under color of state law. Based on the complaint, Wellpath is a "for-profit corporation with whom Defendant [SC]DMH has contracted to administer the day-to-day operations" of the SVPA treatment program. [ECF No. 22 at 3.] As such, the Report correctly concludes that Wellpath is not a person within the

---

[1] Though Sullivan objects to the Report's finding, he offers nothing to support jurisdiction beyond stating that "a justiciable controversy exists" and that dismissal "would leave . . . 'clearly established rights' unclear." [ECF No. 56 at 9, 19.]

meaning of § 1983 and thus cannot be held liable for Sullivan's claims.  [ECF No. 49 at 11 (collecting cases).]

### B.   SCDMH and Gothard, Hutto, and Werts in their Official Capacities

Defendants SCDMH and the individuals named in their official capacities may not be sued under § 1983 because they are entitled to Eleventh Amendment immunity.  The Eleventh Amendment to the United States Constitution precludes unwelcomed suits against a state by its own citizens.  *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," because they are immune from suit.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This immunity extends to a state's agents and instrumentalities.  *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997).  SCDMH is an agency of the state of South Carolina, and the Defendants named in their official capacities each work for that agency.  Thus, they are "arms of the State" for Eleventh Amendment purposes and may not be sued under § 1983.  *Will*, 491 U.S. at 70 (citation omitted).

Sullivan objects that the individual Defendants can be sued in their official capacity under the *Ex Parte Young* exception.  [ECF No. 56 at 10–11.]  This exception is "based on the notion, often referred to as 'a fiction,' that a State officer who acts in violation of the Constitution is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.'"  *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002) (quoting *Ex Parte Young*, 209 U.S. 123, 160 (1908)).  To determine whether the exception applies, a court must consider "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Biggs v. North Carolina Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535

U.S. 635, 645 (2002)).  It is not enough that a plaintiff merely seeks injunctive relief.  *Antrican*, 290 F.3d at 184.

Sullivan's complaint does not seem to allege an ongoing violation.  He claims that USCIS has already denied his fiancée's visa application.  [ECF No. 22 at 8.]  He also states that the decision was final and cannot be appealed.  *Id.*  Sullivan does not indicate that he has filed another application with USCIS, nor that he has any pending travel requests with SCDMH.  *See* ECF No. 56 at 3.  Based on these claims, Sullivan seems to allege a speculative threat rather than a continued harm.

Nevertheless, Sullivan now objects that the *Ex Parte Young* exception applies because Defendants "will again deny his request when he reapplies for a visa."  *Id.* at 4.  He also claims that "Defendants have made [this] clear" to him.  *Id.* at 11.  If true, these allegations would indeed suggest ongoing conduct.  *See Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 424–26 (5th Cir. 2020).  But these new claims notably do not appear in the complaint.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011) (limiting district courts to materials contained in the complaint on a 12(b)(6) motion).  And even assuming the exception applies, Sullivan cannot succeed against the individual Defendants in their official capacity for the same reasons, discussed below, that he cannot state a claim against them in their individual capacities.

### C.    Gothard, Hutto, and Werts in their Individual Capacities

Sullivan may not recover against the Defendants named in their individual capacities because he does not allege a cognizable due process or equal protection violation.

#### 1.    *Due Process*

In his complaint, Sullivan correctly asserts that the Due Process Clause guarantees him a fundamental right to marry.  *See* ECF No. 22 at 8; *see also Loving v. Virginia*, 388 U.S. 1 (1967). He also rightly notes that he retains this constitutional right, even while involuntarily committed. *See Turner v. Safley*, 482 U.S. 78, 84 (1987); *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982). However, Sullivan does not show that the named SCDMH employees violated his right to marry when they prevented him from attending his visa appointment.

The Supreme Court rejected a similar claim in *Kerry v. Din*, 576 U.S. 86 (2015).  There, a United States citizen alleged that the Government abridged her constitutional right to marry when it declined to issue an immigration visa to her husband, an Afghan citizen.  *Din*, 576 U.S. at 88. The Court noted the "long practice of regulating spousal immigration" and unequivocally stated that the Government had "not attempted to forbid a marriage."  *Id.* at 94–95.  To conclude otherwise, it found, would be to "supplement[] the fundamental right to marriage with a fundamental right to live in the United States in order to find an affected liberty interest."  *Id.* at 94.  The Court also noted that "[n]othing" in its precedent "establishe[d] a free-floating and categorical liberty interest in marriage . . . sufficient to trigger constitutional protection whenever a regulation in any way touches upon an aspect of the marital relationship."[2]  *Id.* at 95.  Because

---

[2] The Court notably distinguished *Turner*, a case which Sullivan heavily cites in both his complaint and objections.  *Id.* at 94 (citing 482 U.S. 78 (1987)).  Based on *Turner*, Sullivan argues that Defendants' conduct was "an exaggerated response" and was not reasonably related to "valid penological interests."  [ECF No. 56 at 5–6; *see also* ECF No. 22 at 10–12.]  The *Din* Court, however, found *Turner* inapplicable because it involved a direct regulation on marriage.

the Government's conduct "only indirectly and incidentally" affected the plaintiff's marriage, it did not deprive her of a fundamental liberty interest. *Id.* at 101 (quoting *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 788 (1980)).

So too here. Based on the alleged facts, the SCDMH employees incidentally touched upon Sullivan's potential marriage by denying his transportation request. The agency had no policy against allowing residents to exercise their right to marry and did not act to prevent his marriage. *See* ECF No. 22 at 7. In fact, Sullivan alleges that SVPA officials even told him he could be married at the treatment facility, so long as his fiancée was an approved visitor and the ceremony took place in a visitation room. *See* ECF No. 22 at 5. The court agrees with the Report's finding that the named employees did not violate Sullivan's right to marriage.[3]

Sullivan objects, stating *Din* is not "on point for the matter before the court." [ECF No. 56 at 8.] He notes that the plaintiff seeking a visa there was already married, while Sullivan is "engage[d] in a separate visa process for permission to marry." *Id.* He also distinguishes *Din* as involving a direct challenge to a visa denial. Sullivan claims he seeks the "opportunity" to request a visa and argues Defendants "fatally' interfered with that "right[]." *Id.* The court finds these factual differences immaterial. The Supreme Court crucially found that the Government's visa denial did not violate a fundamental liberty interest because it affected a marital relationship only indirectly. Here, the alleged infringement on Sullivan's marriage is even more attenuated.

### 2. *Equal Protection*

The court further finds that Sullivan has not alleged an equal protection violation against the individual Defendants. The Equal Protection Clause of the Fourteenth Amendment "keeps

---

[3] Sullivan objects to the Report's assertion that he could have married his fiancée at the facility. Sullivan claims he cannot obtain a marriage license in South Carolina without first attending a visa appointment. [ECF No. 56 at 6, 9.] Even if true, his claim does not change the court's conclusion— namely that Defendants' actions indirectly affected Sullivan's ability to marry.

governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). But the Clause "does not take from the States all power of classification." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 271 (1979). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

As the Report notes, Sullivan "has not provided any argument that he has been treated any differently than any other civilly committed individual" or that his "inability to attend [the] appointment is the result of discrimination." [ECF No. 49 at 21.] Sullivan objects to this finding. He claims the "Equal Protection [Clause] demands Plaintiff should be afforded" the same treatment "as would any other United States citizen[.]" [ECF No. 56 at 5.] The court rejects his argument as plainly inconsistent with the applicable law.

Finding no actionable constitutional violation, the court concludes Sullivan is not entitled to damages or permanent injunctive relief under § 1983 as a matter of law.

### III.

Sullivan also requests a preliminary injunction requiring Defendants to (1) transport him to future USCIS appointments, and (2) create a "grievance policy" for SVPA treatment program residents which would "include judicial oversight" and allow them to "appeal [SC]DMH decisions regarding their rights." [ECF No. 22 at 15.] The Report recommends the court deny Sullivan's request. [ECF No. 49 at 22–23.] The court adopts that recommendation.

A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand

it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)) (citation omitted).  To prevail on a request for preliminary injunctive relief, a plaintiff must demonstrate that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tips in his favor, and (4) an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

To satisfy the first two prongs, the moving party must make a "clear showing" that he is likely to succeed at trial, *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013), and that irreparable harm is "neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd.*, 952 F.2d at 812 (citation omitted).  Based on the above analysis, the court concludes that Sullivan has made neither showing.  As noted, several Defendants are immune from suit, and the court does not detect a constitutional violation even where Sullivan can entertain a claim.  Additionally, a preliminary injunction may not prevent the irreparable harm that Sullivan claims will occur—that is, he may be unable to marry his fiancée even if Defendants are ordered to transport him to his visa appointment.  Sullivan objects that he "believes" the Secretary of the Department of Homeland Security will grant his fiancée's visa if he attends a rescheduled appointment.  But that decision is firmly out of this court's control.[4]  Thus, Sullivan shows neither a likelihood of success on the merits nor that an injunction will prevent irreparable harm.

Sullivan also does not prove that the balance of equities points in his favor.  In his objections, Sullivan argues this prong is satisfied because he is prepared to reimburse Defendants for any travel expenses.  [ECF No. 56 at 22.]  He thus claims Defendants could execute his transportation request at minimal costs.  *Id.*  But Sullivan does not account for either the logistical

---

[4] The Report notes that USCIS alerted Sullivan he may be ineligible for his requested visa, based on his offense history.  [ECF No. 49 at 15 n.6.]  He objects, claiming USCIS did not reach a final determination on his eligibility.  [ECF No. 56 at 12.]  Nevertheless, the Report correctly concludes that Sullivan's visa approval is not a foregone conclusion.

costs associated with his travel or the precedential effect of approving his request. Nor does he discuss the impact of an order requiring SCDMH to create a grievance system with judicial review. Such an order—if feasible—would not only impose financial costs on SCDMH but would also require this federal court to mandate the internal affairs of a state agency.

Lastly, Sullivan does he show that a preliminary injunction would serve the public interest. Though he claims this relief would assure the public "that constitutional rights are enforced," Sullivan has not demonstrated a constitutional violation. The court notes that Defendants have chosen to operate the SVPA treatment program subject to various parameters. Sullivan has not shown that an order from this court altering those procedures is necessary. The "extraordinary remedy" of a preliminary injunction is not warranted in this case.

## CONCLUSION

For the above reasons, the Report, ECF No. 49, is adopted in its entirety and incorporated herein.[5] Defendants' motions to dismiss, ECF Nos. 28 and 34, are granted. Plaintiff's request for a preliminary injunction, ECF No. 22, is denied.

**IT IS SO ORDERED.**

March 27, 2024                                  Sherri A. Lydon
Columbia, South Carolina                  United States District Judge

---

[5] To the extent Sullivan's objections concern portions of the Report not reached by the court, his objections are overruled. *See* ECF No. 56 at 4, 16–18.